**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Williams, | No. CV-24-02015-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Pacific Sunwear of California LLC, | |
| Defendant. | |

At issue are three related motions. Defendant Pacific Sunwear of California LLC filed a Motion to Dismiss (Doc. 13, MTD) under Federal Rule of Civil Procedure 12(b)(2) arguing that the Court lacks personal jurisdiction in this case. Rather than file a substantive response thereto, Plaintiff Anthony Williams filed a Motion for Leave to Conduct Limited Jurisdictional Discovery (Doc. 14) for the purpose of ascertaining additional facts that bear upon the question of whether the Court has personal jurisdiction over Defendant. In the same filing, Plaintiff also submitted a Motion to Extend Time to Respond to Defendant's Motion to Dismiss. The Court finds these matters appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court denies Defendant's Motion to Dismiss and denies as moot both of Plaintiff's Motions.

**I.   Background**

Defendant is a California clothing retailer with its headquarters in California. (Doc. 1-1, Ex. 5, Complaint ¶ 11.) Plaintiff is an Arizona resident who has sued Defendant on his own behalf and on behalf of all similarly situated individuals in the state of Arizona.

(*See id.* ¶ 10.) This action arises out of allegations that Defendant routinely embeds its marketing emails with "hidden spy pixel trackers" that allow Defendant to "capture sensitive information, including the time and place where Plaintiff and other Arizona residents open the email and what contents they clicked on." (*Id.* ¶ 2.) Plaintiff alleges that Defendant utilizes this spyware in order to "monitor Plaintiff and other Arizona residents' behavior by collecting and storing the above tracking data to build a detailed profile of the email recipients' interests." (*Id.*) According to the Complaint, Defendant has sent marketing emails laden with spyware to numerous individuals in Arizona but has not procured any of the recipients' consent to collect, retain, or use their personal digital information. (*Id.* ¶ 5.) The class, of which Plaintiff is the putative representative, consists of "[a]ll persons within Arizona who have opened a marketing email containing a tracking pixel from Defendant." (*Id.* ¶ 31.) The condition that class members have actually opened, rather than merely received, Defendant's emails is important because the spy pixels are alleged to become operative only when the host email is opened. (*Id.* ¶¶ 16–17.) There are apparently thousands of members in this class. (*Id.* ¶ 33.)

The Complaint asserts a claim under Arizona Revised Statute § 44-1376.01(A)(1), which provides that "[a] person shall not . . . [k]nowingly procure, attempt to procure, solicit or conspire with another to procure a public utility record, a telephone record or communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." (Complaint ¶¶ 3, 39–48.) Plaintiff initially filed this lawsuit in state court, but Defendant removed pursuant to the Class Action Fairness Act of 2005. (Doc. 1.) Defendant then filed its MTD for lack of personal jurisdiction under Rule 12(b)(2). The Complaint's only express allegation with respect to personal jurisdiction is an assertion that:

> This Court may assert personal jurisdiction over Defendant in accordance with the Arizona Constitution and the Constitution of the United States, because Defendant knowingly conducts business in Arizona such that it has sufficient minimum contacts with Arizona and has purposefully availed itself of Arizona markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiff's claims arise out of

>Defendant's unlawful in-state actions, as Defendant violated the privacy rights of Plaintiff and other Class members in this State.

(Complaint ¶ 8.)

## II. Legal Standard

For a federal court to adjudicate a matter, it must have jurisdiction over the parties. *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). "Because there is no statutory method for resolving [personal jurisdiction], the mode of its determination is left to the trial court." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

"When a district court acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). The facts alleged in the complaint are generally accepted as true unless controverted; the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc.*, 557 F.2d at 1284. "[C]onflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) (citation omitted).

To establish personal jurisdiction over a nonresident defendant, the plaintiff must show that the forum state's long-arm statute confers jurisdiction over the defendant and that the exercise of jurisdiction comports with constitutional principles of due process. *Id.*; *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995). Arizona's long-arm statute allows the exercise of personal jurisdiction to the same extent as the United States Constitution. *See* Ariz. R. Civ. Proc. 4.2(a); *Cybersell v. Cybersell*, 130 F.3d 414, 416 (9th Cir. 1997); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995) (stating that under Rule 4.2(a) "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution"). Thus, a court in

Arizona may exercise personal jurisdiction over a nonresident defendant so long as doing so accords with constitutional principles of due process. *Cybersell*, 130 F.3d at 416.

Due process requires that a non-resident, non-consenting defendant have sufficient minimum contacts with the forum state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts recognize two forms of contacts-based personal jurisdiction within the confines of due process: "(1) 'general jurisdiction' which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the defendant in all matters; and (2) 'specific jurisdiction' which arises out of the defendant's contacts with the forum state giving rise to the subject litigation." *Birder v. Jockey's Guild, Inc.*, 444 F. Supp. 2d 1005, 1008 (C.D. Cal. 2006).

### III. Discussion

General jurisdiction is not at issue here. The Complaint alleges that Defendant is a California company with its headquarters in California. The Court therefore lacks general jurisdiction over Defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (holding that the paradigmatic sources of general jurisdiction over a corporate entity are the entity's place of incorporation and principal place of business). Moreover, the Complaint's invocation of personal jurisdiction utilizes the language of specific jurisdiction, including "minimum contacts" and "purposefully availed." (Complaint ¶ 8.)

In order for a court to exercise specific jurisdiction over a defendant, the defendant must have sufficient minimum contacts with the forum state. Courts in the Ninth Circuit apply a tripartite test to determine whether a defendant's minimum contacts pass constitutional muster. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id.* Second, "the claim must be one which

1 arises out of or relates to the defendant's forum-related activities." *Id.* And third, "the
2 exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be
3 reasonable." *Id.* Plaintiff bears the burden of satisfying the first two elements, but
4 Defendant bears the burden of demonstrating the dissatisfaction of the third element. *Id.*
5 All three elements are required for jurisdiction to lie. *See id.*

6       The first prong of the minimum contacts test contains two sub-prongs, namely the tests for whether a defendant has purposefully directed its activities to the forum state *or* purposefully availed itself of the privilege of conducting business in the forum state. *Id.* These two tests are disjunctive; only one need be met. *Id.* Although the jurisprudential dichotomy between purposeful direction and purposeful availment is not rigid in all instances, *see Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (9th Cir. 2023), courts "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Morrill*, 873 F.3d at 1142. Here, despite the Complaint's reference to purposeful availment, (Complaint ¶ 8), the Court agrees with Defendant's characterization of this action as a tort case, (MTD at 4–5). Therefore, the purposeful direction subcategory of the minimum contacts test applies.

18       Defendant relies on several Ninth Circuit cases for the proposition that the establishment of minimum contacts under the purposeful direction test "requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill*, 873 F.3d at 1142 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004)); *accord Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). This test finds its genesis in the Supreme Court case of *Calder v. Jones*, 465 U.S. 783 (1984), which recognized that intentional conduct occurring outside a forum can nevertheless vest jurisdiction inside the forum if the conduct was calculated to cause injury in the forum. *See Schwarzenegger*, 374 F.3d at 803.

Defendant concedes that the first element of the *Calder* "effects" test for purposeful direction is met here, as Defendant acknowledges that sending an email is an intentional act. (MTD at 5.) Defendant directs its MTD to the second element of the test, arguing that it did not expressly aim any relevant conduct at Arizona because courts the nation over have held that a generalized marketing campaign of national scope does not constitute express aiming at any particular state. (MTD at 5–8.) In support of this contention, Defendant cites a battery of caselaw, which the Court agrees supports Defendant's specific proposition. However, Defendant skips a crucial step in its jurisdictional analysis. As will be explained below, the purposeful direction test only applies to tortious conduct that occurs outside the forum state. It does not govern tortious conduct that takes place inside the forum. In arguing that the elements of the purposeful direction test are not met here, Defendant neglects to grapple with the logically antecedent question of whether the alleged utilization of spyware took place inside or outside of Arizona. Instead, Defendant merely assumes that the complained-of conduct occurred outside Arizona, presumably in California. But that assumption may not be correct. And if Defendant's use of spyware occurred in Arizona, then the purposeful direction test does not apply, in which case Defendant's MTD rings hollow. The Court will first examine the Ninth Circuit's explication of the outer limits of the *Calder* purposeful direction test before proceeding to an analysis of where Defendant's allegedly tortious conduct occurred.

  **1.**  **Jurisdictional Rule Governing Torts Committed Inside the Forum**

*Morrill*, which Defendant relies upon and which applied the *Calder*-derived, effects-based purposeful direction test, held that its "analysis does not conflict with the well-established rule [] that, when a defendant engages in tortious activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to personal jurisdiction there." 873 F.3d at 1148 (citing *Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1258–60 (9th Cir. 1989)). In *Morrill*, the Ninth Circuit invoked that rule as a mere aside. However, one year later, the Ninth Circuit explored the rule in detail. In *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597 (9th Cir. 2018), a Washington resident

1 working for a Washington company allegedly defamed a Bermudan company and a
2 British-Swiss individual at a professional convention in Nevada. 905 F.3d at 601–02. The
3 plaintiffs brought suit in Nevada against both the Washington company and the
4 Washington individual. *Id.* The district court dismissed the case, finding a lack of personal
5 jurisdiction under the purposeful direction test. *Id.* at 602–03. The Ninth Circuit reversed,
6 holding that the district court had applied the wrong test for a case alleging tortious conduct
7 that had occurred inside the forum state. *Id.* at 603–04.

8 "Generally, 'the commission of an intentional tort in a state is a purposeful act that
9 will satisfy the first two requirements of the minimum contacts test.'" *Id.* (cleaned up)
10 (quoting *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir.
11 1985)). In *Freestream*, "[r]ather than look to the location of allegedly intentional tortious
12 conduct, the district court's minimum contacts analysis centered on what has become
13 known as the 'effects doctrine' or 'effects test' of *Calder*[]." *Id.* "The district court's
14 reliance on the *Calder* effects test was misplaced, however, because the inquiry under that
15 test focuses on conduct that takes place *outside* the forum state and that has effects inside
16 the forum state." *Id.* (emphasis in original). Although the *Freestream* court declared that
17 the district court's analysis was erroneous, the Circuit court did not fault the district court
18 for erring because the jurisprudence surrounding the Circuit's interpretation of *Calder* was
19 muddled at the time of the district court's ruling. The appellate court therefore endeavored
20 to clarify its jurisprudence relating to personal jurisdiction in tort cases.

21 After summarizing its caselaw following *Calder*, the *Freestream* court noted that,
22 "[r]ead together, those statements comparing within-forum-state versus out-of-forum-state
23 conduct, and contract versus tort actions, suggest that a purposeful direction analysis
24 naturally applies in suits sounding in tort where the tort was committed outside the forum
25 state." *Id.* at 605. The court reaffirmed its traditional interpretation of *Calder*'s role in
26 personal jurisdiction analyses, but the court also recognized that many of its more recent
27 cases had lost track of *Calder*'s place in the jurisprudential firmament. "Although rigidly
28 applying the *Calder* effects test without taking into account where the allegedly tortious

conduct occurred conflicts with our approach in *Paccar*, we may have unwittingly contributed to the district court's error by suggesting otherwise in a couple of our subsequent opinions." *Id.* The court concluded its sampling of its historical precedents by holding:

> This review of the history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state. *Paccar* was rooted in the well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction.
>
> The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors.

*Id.* at 606 (internal citations omitted). Before concluding its analysis, however, the *Freestream* court distinguished its case from that of *Morrill*. The *Freestream* opinion contained the following synopsis and construction of *Morrill*.

> In *Morrill*, the plaintiffs, residents of Arizona, filed suit in Arizona and alleged that the defendants engaged in conduct aimed at the forum state because the defendants filed suit against the plaintiffs for defamation in Nevada and then served process, sought subpoenas, and engaged in other allegedly abusive litigation-related tactics in Arizona. We found that because the defendants had not expressly aimed their conduct at Arizona, personal jurisdiction was lacking.
>
> At first blush *Morrill* appears to conflict with *Paccar*, since some of the conduct did occur in Arizona. But the allegedly tortious conduct in *Morrill* was materially different from that in *Paccar* and here. Namely, it was the litigation—and only the litigation—that brought the *Morrill* defendants to Arizona. []
>
> . . . .
>
> Because the Nevada litigation *required* the defendants to conduct activity in Arizona (where the plaintiffs happened to reside), and the defendants thus were not in the forum state of their own volition, they had not availed themselves of the forum under the minimum contacts test. By contrast, in the instant case, Schmidt *voluntarily* traveled to Nevada to attend the aviation industry conference, and *voluntarily* agreed to speak with Shvetsova and Khalek there. In other words, Schmidt threw *Morill*'s hypothetical rock.

- 8 -

> We therefore reject Defendants' invitation to find that *Morill*, rather than *Paccar*, applies to the circumstances here.

*Id.* at 606–07 (emphasis in original) (internal citations omitted). Therefore, although *Morrill* involved allegedly tortious conduct that took place in the forum state, *Morrill* was adjudicated as if the conduct had not taken place in the forum state. Nevertheless, the traditional in-forum-state rule, as clarified by *Freestream*, continues to govern in the Ninth Circuit. Absent extraordinary circumstances such as those present in *Morrill*, if a defendant engages in tortious conduct inside the forum state, then the first two prongs of the minimum contacts test are automatically met. In such instances, there is no need to conduct a purposeful direction analysis. A court would proceed straight to the third prong, under which an objecting defendant must affirmatively demonstrate that the maintenance of jurisdiction offends fair play and substantial justice. This begs the question of where the relevant conduct in the instant case occurred.

### 2.     Where Does Digital Spying Occur?

As noted above, Defendant has cited copious caselaw in support of its argument that national marketing campaigns, without more, do not give rise to personal jurisdiction in any particular state. However, all of these cases proceeded under either the purposeful direction test or the purposeful availment test. None of them conducted an analysis under the *Freestream*/*Paccar* rubric. Of course, that does not necessarily render such cases inapposite regarding the antecedent question of where a tort occurs. But in many of the cases cited by Defendant, the underlying tort occurred outside the forum, and the in-forum emails and other marketing activities were mere ancillary conduct invoked by the plaintiff as a jurisdictional hook.[1] Defendant also cites cases involving causes of action that are

---

[1] *Sundby v. Johnson*, No. CV-19-00107-TUC-RCC (BGM), 2020 WL 995572 (D. Ariz. Mar. 2, 2020) (case involving a claim for unjust enrichment regarding a Georgia trust, in which the plaintiff attempted to use email communications as a jurisdictional hook); *Gonzalez v. US Hum. Rts. Network*, 512 F. Supp. 3d 944 (D. Ariz. 2021) (case involving a claim for wrongful termination by a Georgia company of a fully remote employee discharging job duties unrelated to Arizona, in which the plaintiff attempted to use email communications as a jurisdictional hook); *Johnson v. Mitchell*, No. 2:10-CV-1968 GEB GGH, 2013 WL 595218 (E.D. Cal. Feb. 15, 2013) (case involving a claim for malicious

- 9 -

analytically distinct from intentional torts, such as claims for strict products liability and breach of contract, the jurisdiction for which the Ninth Circuit assesses by standards that are unrelated to the law governing intentional torts.[2] Only two of the cases Defendant cites are factually comparable to the case at bar. As discussed below, neither of those two cases is persuasive here.

As a matter of common sense, the intentional use of spyware on an unwitting victim's computer must be deemed a tort that occurs inside the forum where the victim is located. It makes no difference that emails and many other kinds of digital interaction launch in a location-agnostic manner, such that the sender of a malicious communication neither knows nor cares where the recipient is physically located. Were it otherwise, a cyber-thief could deliberately infect a person's computer with malware in order to steal his social security number and banking information and then evade personal jurisdiction simply because the tortfeasor sent the malware from outside the victim's forum without knowledge of where the victim was physically located. Similarly, a cyber-bully could send a malicious communication to a victim encouraging the victim to commit suicide and then evade personal jurisdiction in the victim's forum. The law does countenance such an absurd and unjust state of affairs.

---

prosecution occurring in Panama, in which the plaintiff attempted to use email communications as a jurisdictional hook); *Lauck v. County of Campbell*, No. CV-21-08036-PCT-MTL, 2021 WL 2780868 (D. Ariz. July 2, 2021) (case involving various claims arising entirely out of conduct occurring in Wyoming, in which the plaintiff attempted to use email communications as a jurisdictional hook); *James v. Caesars Ent. Corp.*, No. CV-19-01310-PHX-JAT, 2019 WL 4673338 (D. Ariz. Sept. 25, 2019) (case involving claims for employment discrimination occurring entirely outside of Arizona, in which the plaintiff attempted to use email communications as a jurisdictional hook); *Legendz Ent., LLC v. Cam Specialty Lending 1, Ltd*, No. 2:23-CV-03097-ODW (MARX), 2024 WL 2848263 (C.D. Cal. June 5, 2024) (case involving a claim for fraudulent inducement regarding a financial transaction occurring entirely outside the forum, in which the plaintiff attempted to use email communications as a jurisdictional hook); *Lewis v. Four Seasons Hotel Ltd.*, No. CV 23-2830-DMG (PVCX), 2024 WL 2104399 (C.D. Cal. Mar. 29, 2024) (case involving premises liability for an accident occurring in Tanzania, in which the plaintiff attempted to use marketing communications as a jurisdictional hook).

[2] *Glutz v. Fitness Int'l LLC*, No. CV-19-02578-PHX-SRB, 2020 WL 7016469 (D. Ariz. June 11, 2020); *Chorost v. Rotor Am. Inc.*, No. CV-21-00235-TUC-RCC (LCK), 2022 WL 17361299 (D. Ariz. Aug. 8, 2022); *Casiano v. Predator Motorsports Inc.*, No. CV-23-01145-PHX-DLR, 2023 WL 6127720 (D. Ariz. Sept. 19, 2023).

In exploring the nuances of personal jurisdiction, the Ninth Circuit has twice used the example of a person throwing a rock through another person's window. *See Morrill*, 873 F.3d at 1148; *Freestream*, 905 F.3d at 607. The Court finds this analogy instructive and adapts it to the facts of this case as follows. Suppose a person erected a catapult capable of launching rocks a great distance. Suppose further that this person then loaded his catapult with rocks and donned a blindfold such that he would not know where the catapult was aimed. This person then proceeds to fling rocks in all manner of directions. These rocks land in various fora around the nation, causing property damage and personal injury. Each of the victims sues the tortfeasor in his or her home forum. The defendant then files dismissal motions under Rule 12(b)(2) in each of those fora on the grounds that he (1) launched the rock from his own home state and (2) did not know where the rock would land. Dismissal would not be appropriate in such an instance. Likewise here. Defendant has sent marketing emails to people residing throughout the nation, but these marketing emails are alleged to have been embedded with targeted spyware that inflicted particularized and distinct privacy deprivations upon each recipient whenever he or she opened the tainted communication. The Complaint pleads an intentional tort that, but for its digital character, is materially indistinguishable from the tort of a thrown rock. Absent binding caselaw to the contrary, the Court concludes that it possesses personal jurisdiction over Defendant in this case.

At least one case from a court within this Circuit supports the approach and conclusion above. In *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020), the plaintiff WhatsApp alleged that "defendants sent malware, using WhatsApp's system, to approximately 1,400 mobile phones and devices designed to infect those devices for the purpose of surveilling the users of those phones and devices." 472 F. Supp. 3d at 658. Although the court applied the *Calder* effects test, it nevertheless analyzed where the relevant tort occurred and concluded that the tort occurred in the state where the digital hijacking was alleged to have taken place. *Id.* at 672–73.

> In their reply brief, defendants argue that, even if WhatsApp had servers in California and NSO sent messages through those servers, there is no allegation or argument that NSO selected the location of the server. In other words, defendants contend the location of the server is fortuitous and their claims would have been the same if the servers were located in Cleveland, Paris, or Timbuktu. The express aiming prong depends on the type of tort alleged, and here plaintiffs allege that defendants targeted and accessed WhatsApp's servers without authorization. The location of the servers is, therefore, not a fortuity but central to the alleged tortious conduct. For example, courts have analogized a CFAA cause of action to digital "breaking and entering" and a "trespass offense" similar to the common law trespass to chattels offense alleged. By sending malicious code to the California based servers, defendants allegedly caused a digital transmission to enter California, which then effectuated a breaking and entering of a server in California.

*Id.* (internal citations omitted). Defendant's MTD in this case rests upon a nearly identical argument. Although Defendant admits that it sent Plaintiffs marketing emails that allegedly contained spyware, Defendant argues that that act does not confer jurisdiction in Arizona because Defendant did not intend that Plaintiff would be located in Arizona when he opened the email and thereby activated the alleged hidden spy pixels. Consistent with the Northern District of California's holding in *WhatsApp*, the Court concludes that it does not matter whether Defendant intended that Plaintiff trigger its alleged spy pixels in Arizona or anywhere else. The operation of spyware in Arizona by itself establishes personal jurisdiction over Defendant in this forum, absent a showing of unfair play or substantial injustice. It is significant that Plaintiff's Complaint is limited to those instances where a victim opened the allegedly invasive emails, thereby triggering the latent spyware. The underlying statute proscribes the fraudulent procurement of communication records, as well as attempts, solicitations, and conspiracies to fraudulently procure communication records. A.R.S. § 44-1376.01(A)(1). The Court does not address where such inchoate offenses might occur. Insofar as the case at bar is concerned, it is enough to conclude that the actual operation of the alleged spyware occurred in Arizona and thereby vests jurisdiction in this forum.

Defendant finds its strongest support in *Sessa v. Ancestry.com Operations Inc.*, 713 F. Supp. 3d 997 (D. Nev. 2024), in which two plaintiffs alleged that the defendant's use of private family information in its online database and marketing emails infringed the plaintiffs' right to be free from publicity under a Nevada statute. 713 F. Supp. 3d at 1001. Although much of the court's analysis focused on the defendant's maintenance of its allegedly intrusive website, which is not relevant here, the court also held that "Plaintiffs' injury, that their personal information is impermissibly being used to sell Ancestry subscriptions, would 'follow them wherever they might [choose] to live or travel,' and is not enough to demonstrate that Ancestry's actions were aimed at Nevada." *Id.* at 1006 (cleaned up) (quoting *Briskin v. Shopify, Inc.*, 87 F.4th 404, 416 (9th Cir. 2023)). The *Sessa* court expressly rested its conclusion on the Ninth Circuit's holding in *Briskin*. *Id.* at 1004 ("Because the Court's reasoning in the previous Order is inconsistent with the Ninth Circuit's holding in *Briskin*, the Court exercises its inherent power to amend interlocutory orders and GRANTS Defendant's Motion for Reconsideration. The Court will now apply the Ninth Circuit's reasoning in *Briskin* to the case at hand."). In *Briskin*, the Ninth Circuit held that, "[w]hen a company operates a nationally available e-commerce payment platform and is indifferent to the location of end-users, the extraction and retention of consumer data, without more, does not subject the defendant to specific jurisdiction in the forum where the online purchase was made." 87 F.4th at 409. The Court need not determine whether or to what extent *Briskin* and *Sessa* are inconsistent with the Court's analysis herein, because the Ninth Circuit has vacated its opinion in *Briskin* and granted a rehearing *en banc*. *Briskin v. Shopify, Inc.*, 101 F.4th 706 (9th Cir. 2024). Therefore, *Briskin* is immaterial and *Sessa* is unpersuasive.

The Ninth Circuit has previously acknowledged the difficulty present in the adjudication of personal jurisdiction in cases where the relevant conduct occurs in the digital sphere. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) ("In prior cases, we have struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the

website can be viewed."). Much of this difficulty arises from tension between the realities of digital conduct and the Supreme Court's instruction that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Applying those tenets, the Ninth Circuit has held that geo-specific advertising does not by itself vest jurisdiction over a trademark dispute in any particular forum. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020). Similarly, a court in this District held that jurisdiction is not vested in a forum merely because a digital advertisement containing an alleged trademark violation appeared on a person's computer in that forum. *Modulus Fin. Eng'g Inc. v. Modulus Data USA Inc.*, No. CV-19-04685-PHX-SMB, 2020 WL 2512785, at *5 (D. Ariz. May 15, 2020). Those holdings, although somewhat related to the facts of the instant case, are distinguishable.

Plaintiff's claim of illicit digital surveillance is materially different from a claim of trademark infringement. The analysis of a tort claim "depends on the type of tort alleged." *See WhatsApp*, 472 F. Supp. 3d at 672. Although each email containing an alleged trademark violation in some sense constitutes the violation itself, it is more sensible to view such emails as distinct manifestations of a single violation, at least for purposes of personal jurisdiction. In contrast, each instance of Defendant's alleged spying on Plaintiff and other similarly situated individuals is a specific, factually distinct tort. The emails in this case are not mere marketing materials by which a preexisting trademark violation is further disseminated to a wider audience. Instead, the emails here are alleged to be trojan horses containing spyware that effects a discrete, intentional tort on each victim who opens the email. The myriad instances of alleged spying are thus not iterations of an ongoing violation, but are each separate offenses unto themselves, with unique facts and unique victims. In other words, the offensive emails in trademark cases can be viewed as evidence of a violation against a competing company, but the recipient of the email is hardly a victim

of the complained-of conduct. Here, the emails *are* the offensive conduct, and the recipients *are* the victims. Although the circumstances surrounding the receipt of an email containing a trademark violation may be fortuitous to the trademark violation itself, the circumstances surrounding a deliberate act of spying are not fortuitous to the spying. This conclusion is the basis of the Ninth Circuit's unequivocal holding that the commission of an intentional tort generally confers personal jurisdiction upon courts in the forum where the tort occurred. *See Freestream*, 905 F.3d at 606. A defendant cannot commit an intentional tort in a forum and then claim that the location of his victim renders jurisdiction in that forum fortuitous. Denying jurisdiction in such cases would be a nonsensical windfall to the tortfeasor. In short, the emails sent by Defendant in this case are akin to the Ninth Circuit's proverbial rock. Thus, under *Freestream*, the first two elements of the minimum-contacts test are satisfied, and it becomes Defendant's burden to establish that personal jurisdiction in this case would contravene traditional notions of fair play and substantial justice.

Defendant has not attempted to make such a showing, and nor could it. Defendant concedes that it conducts activities in this forum. (MTD at 9.) Although Defendant's Arizona activities are unrelated to Plaintiff's claims and are therefore insufficient to satisfy the purposeful direction test, the Court can consider such activities in the context of the substantial justice analysis. Because Defendant already conducts business in this forum, the Court concludes that it would not be unduly burdensome for Defendant to litigate this case in Arizona. Therefore, personal jurisdiction is proper. Because the Court rejects Defendant's MTD, it need not consider Plaintiff's motions for limited jurisdictional discovery and an extension of time to respond to the MTD. Although it is procedurally anomalous for a district court to dispose of a motion to dismiss without adversarial briefing, in this case the alternative course of action would have required adjudication of two laborious and vigorously contested motions, the relevance of which depends entirely on the validity of Defendant's MTD. Rather than waste the time and resources of all involved, the Court elects to simply deny Defendant's MTD on the merits.

1  **IT IS THEREFORE ORDERED** denying Defendant's Motion to Dismiss Plaintiff's Complaint. (Doc. 13.)

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Motion for Leave to Conduct Limited Jurisdictional Discovery and to Extend Time to Respond to Motion to Dismiss. (Doc. 14.)

Dated this 30th day of October, 2024.

Honorable John J. Tuchi
United States District Judge