1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BERGIN, FRAKES, SMALLEY & OBERHOLTZER, PLLC**
Brian M. Bergin (AZ Bar No. 016375)
Email: BBergin@bfsolaw.com
4343 East Camelback Road, Suite 210
Phoenix, Arizona 85018
Telephone: 602.888.7855
Email: bbergin@bfsolaw.com

**MANATT, PHELPS & PHILLIPS, LLP**
Brad W. Seiling (Admitted *Pro Hac Vice)*
Email: BSeiling@manatt.com
Nathaniel L. Bach (Admitted *Pro Hac Vice*)
Email: NBach@manatt.com
Cody A. DeCamp (Admitted *Pro Hac Vice*)
Email: CDeCamp@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: 310.312.4000

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Williams, individually and on behalf of all others similarly situated, | No. CV-24-02015-PHX-JJT |
| Plaintiff, | **DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| Pacific Sunwear of California, LLC, | **(ORAL ARGUMENT REQUESTED)** |
| Defendant. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

I.      STATEMENT OF FACTS............................................................................ 2

II.     FED. R. CIV. P. 12(C): JUDGMENT ON THE PLEADINGS.............................. 3

ARGUMENT .................................................................................................... 3

III.    TUCSRA DOES NOT APPLY TO THE CONDUCT ALLEGED IN THE
        COMPLAINT........................................................................................ 4

        A.      PacSun is Not a Communication Service Provider...................................... 5

        B.      The Communications at Issue Are Not "Communication Service
                Records."...................................................................................... 7

        C.      The Rule of Lenity Mandates that TUCSRA be Construed in
                PacSun's Favor.............................................................................. 9

        D.      TUSCRA's Legislative History Further Undermines Plaintiff's
                Claim........................................................................................ 11

IV.     PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS
        DEMONSTRATING THAT HE IS PACSUN'S "CUSTOMER." ..................... 13

V.      THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE................ 14

CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ........................................................ 3

*Bruer v. Phillips L. Grp. PC,*
2019 WL 2552060 (D. Ariz. June 20, 2019) ................................. 3

*City of Phoenix v. Donofrio,*
99 Ariz. 130 (1965).......................................................................... 9

*D'Hedouville v. H&M Fashion USA, Inc.,*
Case No. C20243386 (Oct. 11, 2024)........................................ 8, 9, 13, 14

*Dworkin v. Hustler Magazine, Inc.,*
867 F.2d 1188 (9th Cir. 1989) ...................................................... 3

*Haag v. Steinle,*
227 Ariz. 212 (Ct. App. 2011) .............................................. 12, 13

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
896 F.2d 1542 (9th Cir. 1989) ...................................................... 3

*Hartley v. Urb. Outfitters, Inc.,*
--- F.Supp.3d ----, 2024 WL 3445004 (E.D. Pa. July 17, 2024)................. 10

*hiQ Labs, Inc. v. LinkedIn Corp.,*
31 F.4th 1180 (9th Cir. 2022) ...................................................... 10

*In re Marriage of McCulloch & Parker,*
257 Ariz. 168 (Ct. App. 2024) ...................................................... 8

*Leocal v. Ashcroft,*
543 U.S. 1 (2004).......................................................................... 10

*Macias v. Kaplan-Siekmann,*
2024 WL 83448 (D. Ariz. Jan. 8, 2024) ....................................... 14

*Maloney v. Kropp,*
2013 WL 500934 (D. Ariz. Feb. 11, 2013).................................... 14

*Pettit v. Arizona Bd. of Regents,*
2008 WL 11298067 (D. Ariz. Apr. 10, 2008) .............................. 2

*Prudential v. Estate of Rojo-Pacheco,*
192 Ariz. 139 (Ct. App. 1997) ...................................................... 6

*State v. Barnett,*
209 Ariz. 352 (Ct. App. 2004) ...................................................... 10

*State v. Barragan-Sierra*,
   219 Ariz. 276 (Ct. App. 2008) ............................................................ 7

*State v. Duran*,
   No. 2 CA-CR 2016-0318, 2017 WL 6333916, (Ariz. Ct. App. Dec. 11, 2017) .......... 11

*State v. Payne*,
   223 Ariz. 555 (Ct. App. 2009) ............................................................ 11

*State v. Zuck*,
   No. 2 CA-CR 2019-0130, 2021 WL 2103598, (Ariz. Ct. App. May 25, 2021) .......... 11

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................. 2

*Van Buren v. United States*,
   593 U.S. 374 (2021) .................................................................... 10

*Varela v. Ryan*,
   2016 WL 8252819, (D. Ariz. Nov. 15, 2016) ............................................. 8

*Washburn v. Pima Cnty.*,
   206 Ariz. 571 (Ct. App. 2003) ......................................................... 6, 7

**STATUTES**

A.R.S. § 13-101(2) ....................................................................... 10

A.R.S. § 13-3001(3) .................................................................... 5, 7

A.R.S. § 13-3006 ......................................................................... 5

A.R.S. § 13-3012(1) ...................................................................... 5

A.R.S. § 13-3018 ......................................................................... 5

A.R.S. § 13-3018(B) .................................................................. 5, 6, 13

A.R.S. § 13-3018(G) ...................................................................... 6

A.R.S. § 44-1376(1) .............................................................. 4, 6, 7, 8

A.R.S. § 44-1376(4) ................................................................... 7, 14

A.R.S. § 44-1376(6) ...................................................................... 6

A.R.S. § 44-1376(7) .................................................................... 6, 7

A.R.S. § 44-1376(7)(a) .................................................................. 14

A.R.S. § 44-1376.01 ................................................................... 3, 13

A.R.S. § 44-1376.01(A)(1) .............................................................. 4, 6

A.R.S. § 44-1376.02(A) ............................................................... 6, 13

A.R.S., § 44-1376.04(A) .................................................................. 4

A. R. S. § 44-1376.05 ................................................................... 10

A.R.S. § 44-1376.41(A) ................................................................................. 14

18 U.S.C. § 1039 ........................................................................................... 12

18 U.S.C. § 1039(h)(2) .................................................................................. 12

18 U.S.C. § 1039(h)(4) .................................................................................. 12

47 U.S.C. §§ 153(51) ..................................................................................... 12

47 U.S.C. §§ 153(53) ..................................................................................... 12

47 U.S.C. § 222 ............................................................................................. 12

Arizona's Eavesdropping and Communications Act ................................ 5, 6, 7

Arizona's Telephone, Utility and Communication Service Records Act, A.R.S. § 44-1376 ......................................................................................... passim

Computer Fraud and Abuse Act .................................................................... 10

Gramm-Leach Bliley Act (15 U.S.C. § 6821) ............................................... 12

Prompt Payment Act ....................................................................................... 7

Telephone Records and Privacy Protection Act ............................................ 12

**OTHER AUTHORITIES**

Arizona H.R.B. Summ., 2007 Reg. Sess. H.B. 2726 (February 19, 2007) ...... 12

Arizona Senate Fact Sheet, 2006 Reg. Sess. H.B. 2785 (March 27, 2006) ......... 5, 11

Arizona Senate Fact Sheet, 2007 Reg. Sess. H.B. 2726 (March 12, 2007) ......... 6, 12

H.B. 2785 Fact Sheet 47th Leg. 2d Reg. Sess. (Ariz. Apr. 24, 2006) ............... 13

Mikael Berner, *The Business Of Email Tracking: What To Know About Spy Pixels In Your Inbox*, Forbes (June 9, 2022) https://www.forbes.com/councils/forbestechcouncil/2022/06/09/the-business-of-email-tracking-what-to-know-about-spy-pixels-in-your-inbox/ ............... 2

**RULES**

Fed. R. Civ. Proc., Rule 12(b)(6) .................................................................... 3

Fed. R. Civ. Proc., Rule 12(c) ......................................................................... 3

Rule 111 .......................................................................................................... 8

Rule 111(c)(1)(C) ............................................................................................ 8

## **INTRODUCTION**

This case seeks to criminalize a ubiquitous online advertising practice—including in emails software that allows the sender to determine whether the recipient has received, read or otherwise engaged with the content of an email message. As Plaintiff Anthony Williams' ("Plaintiff") complaint confirms, as many as 70% of all emails contain "pixel tags" or read receipt technology (what Plaintiff derisively calls "spy pixels"). Now, Plaintiff seeks to cram square factual allegations into a round statutory hole. But Arizona's Telephone, Utility and Communication Service Records Act ("TUCSRA"), A.R.S. § 44-1376, *et seq.*—a criminal statute that also provides for civil liability—does not apply to read receipt technology as a matter of law. In the nearly 20 years since its enactment, no court has adopted Plaintiff's novel and expansive interpretation of TUCSRA. In fact, until this recent wave of litigation advancing this novel theory of liability, TUCSRA has been cited in only two criminal cases dealing with motions to suppress criminal defendants' telephone records. TUCSRA was enacted in 2006 to combat "pretexting" by data brokers—the practice of posing as the customer of a telephone company to gain access to that customer's telephone records and sell them. The statute has been amended but has not been expanded so broadly to prohibit the use of read receipt technology.

The plain language of TUCSRA and its legislative history confirm that Plaintiff's lawsuit lacks merit for at least three reasons. First, Defendant Pacific Sunwear of California, LLC ("PacSun")—a retailer that sells lifestyle apparel and accessories designed for teens and young adults—is not a "communication service provider" and thus is not subject to the statute. Second, the information collected from the read receipt technology does not qualify as a "communication service record" within the meaning of the statute. Third, Plaintiff has not alleged that he ever was a customer of PacSun, which is dispositive because only customers of a communication service provider have standing to sue under the statute. Plaintiff seeks to weaponize TUCSRA to criminalize ubiquitous technology, used by businesses across the country, which merely allows PacSun to determine if people open the emails it sends them. The Court should decline Plaintiff's invitation to stretch the scope of

TUCSRA beyond its breaking point. The Court should grant PacSun's motion for judgment on the pleadings and dismiss the complaint with prejudice.

## I.    <u>STATEMENT OF FACTS.</u>

Plaintiff alleges that he "has frequently received and opened marketing emails from [PacSun] to review promotional materials." Complaint ("Compl."), ¶ 23. Plaintiff, who appears to have voluntarily enrolled to receive PacSun's emails and expressed interested in their contents (*id.*), complains that these emails contain "hidden spy pixel trackers" which allow PacSun to determine "the time and place where Plaintiff and other Arizona residents opened the email and what contents they clicked on." *Id.*, ¶¶ 2, 20. Plaintiff contends that "[t]he objective of a spy pixel is to collect email engagement information"— the equivalent of a read receipt. *Id.*, ¶ 15. In addition to informing PacSun if and when customers open its emails, these "spy pixels" allegedly provide PacSun with "the IP address and other unique identity details of the computer or smartphone used to read the email, and from the latter, the geographical location of the recipient." *Id.*, ¶ 16. These so-called "spy pixels" are "embedded in the images of the email[s], which are stored on a server and referenced in a URL" and are activated once a consumer opens an email containing one. *Id.*, ¶¶ 17, 26.

The complaint incorporates by reference a Forbes article from 2022 which sheds additional light on email tracking. Mikael Berner, *The Business Of Email Tracking: What To Know About Spy Pixels In Your Inbox*, Forbes (June 9, 2022) https://www.forbes.com/councils/forbestechcouncil/2022/06/09/the-business-of-email-tracking-what-to-know-about-spy-pixels-in-your-inbox/ (cited at Compl., ¶ 12, n. 2).[1] The

---

[1] A court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The holding in *Ritchie* applies in equal force to motions for judgment on the pleadings. *Pettit v. Arizona Bd. of Regents*, 2008 WL 11298067, at *2 (D. Ariz. Apr. 10, 2008) (motion for judgment on the pleading not converted to motion for summary judgment where extrinsic evidence relied upon was referred to and relied upon in the complaint).

article describes these pixels as a "read receipt" that "at minimum, [is] a way for email services or email clients to inform an email sender whether or not you've opened their message. At maximum, an email sender can also receive the time when you opened it, your location when you did and the type of device you read it on." *Id.* Both the complaint and Forbes article confirm that the practice of email tracking is ubiquitous, as "a 2018 Princeton study on email tracking tested over 12,000 emails from 900 senders offering mailing list subscriptions and found that 70% contained trackers." Compl., ¶ 12, n. 2.

Plaintiff now brings a putative class action claim under A.R.S. § 44-1376.01 based on PacSun's alleged procurement of his "communication service records" via read receipt technology in PacSun's emails. Compl., ¶¶ 40–44. He seeks $1,000 in statutory damages for each email he opened containing this read receipt technology. *Id.*, ¶¶ 46, 48.

## II.     <u>FED. R. CIV. P. 12(C): JUDGMENT ON THE PLEADINGS.</u>

Courts must dismiss a complaint under Federal Rule of Civil Procedure, Rule 12(c) if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is also proper "when there is either a 'lack of a cognizable legal theory' or the 'absence of sufficient facts alleged under a cognizable legal theory.'" *Bruer v. Phillips L. Grp. PC*, 2019 WL 2552060, at *2 (D. Ariz. June 20, 2019) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). A motion for judgment on the pleadings is timely when brought "after the pleadings are closed 'but early enough not to delay trial.'" *Bruer*, 2019 WL 2552060, at *2. A motion for judgment on the pleadings "is functionally identical to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and the same legal standard applies to both motions." *Id.* (citing *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

## <u>ARGUMENT</u>

TUCSRA, enacted by the Arizona legislature in 2006, was never intended to cover, nor can it be interpreted to prohibit, the use of read receipt technology as alleged in

Plaintiff's complaint. TUCSRA makes it a criminal offense for, among other things, a person to "[k]nowingly procure, attempt to procure, solicit or conspire with another to procure a public utility record, a telephone record or communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01(A)(1). The statute contains a civil private right of action for "a customer whose communication service records, telephone records or public utility records were procured, sold or received in violation of this article[.]" *Id.*, § 44-1376.04(A).

The complaint fails to allege a TUCSRA violation because (1) PacSun is not a "communication service provider" within the statutory scheme, (2) the information Plaintiff contends PacSun obtained do not constitute "communication service records" under the statute, and (3) Plaintiff does not allege that he has ever been PacSun's "customer." For those reasons, the Court should dismiss the complaint with prejudice.

## III.    TUCSRA DOES NOT APPLY TO THE CONDUCT ALLEGED IN THE COMPLAINT.

Plaintiff's claim fails at step one because the information purportedly obtained by PacSun does not constitute a "communication service record" as defined by the statute. TUCSRA provides that a "communication service record" includes:

> subscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

A.R.S. § 44-1376(1). The statute also provides that "[c]ommunication service records do not include the content of any stored oral, wire or electronic communication or a telephone record." *Id.* TUCSRA's statutory text, combined with the overall statutory scheme and applicable canons of statutory construction, confirm that the only materials that fall under the definition of a "communication service record" are those obtained and retained by a "communication service provider."

**A.    PacSun is Not a Communication Service Provider.**

TUCSRA, when read together with Arizona's Eavesdropping and Communications Act, confirms that PacSun is not a "communication service provider" and has not procured "communication service records."

The Eavesdropping and Communications Act ("ECA"), initially enacted in 1968, prohibits, among other things, (1) obtaining "any knowledge of the contents of a wire or electronic communication by connivance with a communication service provider or its officer or employee" without lawful authorization, and (2) a "communications service provider" or its agents from "intentionally divulg[ing] to anyone but the person for whom it was intended, [. . .], the contents or the nature of a wire or electronic communication entrusted to the communications service provider for transmission or delivery." A.R.S. § 13-3006. The ECA defines a "communication service provider" as "any person who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." A.R.S. § 13-3001(3).

The ECA was amended in 2000 to allow prosecutors to "issue a subpoena duces tecum to a communication service provider in order to obtain communication service records in connection with a criminal investigation or prosecution for any offense in which a prosecutor suspects that a computer or network was used." A.R.S. § 13-3018(B). These amendments further confirmed that a "communication service provider" would be exempt from the prohibitions of A.R.S. § 13-3006 when providing information to law enforcements pursuant to a subpoena issued under to Section 13-3018. *See id.* § 13-3012(1).

TUCSRA was enacted six years after the ECA was amended to define "communication service record." *See* AZ S. F. Sheet, 2006 Reg. Sess. H.B. 2785 (Mar. 27, 2006). The initial version of TUCSRA prohibited the knowing procurement or sale of a "telephone record" without the authorization of the customer to whom that record belonged. *See id.* TUCSRA defines a "telephone record" as information that is "retained by a telephone company" relating to calls made to or from a customer and details concerning those calls. A.R.S. § 44-1376(7). A "telephone company" is "any person that

provides commercial telephone services to a customer, irrespective of the communications technology that is used to provide the service[.]" *Id.* § 44-1376(6).

TUCSRA was again amended in 2007. AZ S. F. Sheet, 2007 Reg. Sess. H.B. 2726 (Mar. 12, 2007). The amendment expanded the categories of records that could be collected without a customer's authorization to include a "public utility record" and "communication service record." *See id.*; A.R.S. § 44-1376.01(A)(1). These amendments also added "communication service record" as a defined term. *Id.* § 44-1376(1). TUCSRA and the ECA contain identical definitions of "communication service record." *Compare* A.R.S. § 44-1376(1) *with id.* § 13-3018(G). Both statutes also contain substantially similar exemptions for the collection of these records by law enforcement. *Compare* A.R.S. § 44-1376.02(A) *with* A.R.S. § 13-3018(B).

Reading these related statutes in harmony confirms that a "communication service record" is a record obtained by a "communication service provider," which PacSun is not. It is axiomatic that "[t]he principal goal in interpreting a statute is to ascertain and give effect to the legislature's intent." *Washburn v. Pima Cnty.*, 206 Ariz. 571, 575 (Ct. App. 2003). To that end, where a statute's application is ambiguous, the court must "consider other factors such as the statutory scheme, the statute's subject matter, historical context, effects and consequences, and spirit and purpose." *Id.* Arizona courts "presume that when the legislature enacts a statute, it is aware of existing statutes," and that new laws should be "read in the context of related provisions and of the overall statutory scheme" to "achieve consistency among the related statutes." *Prudential v. Estate of Rojo-Pacheco*, 192 Ariz. 139, 148 (Ct. App. 1997) (citation omitted); *Washburn*, 206 Ariz. at 576. "Enactments which deal with the same class of things and have a common purpose are *in pari materia* and must be read and construed together in order to give full effect to each statute, if possible." *Id.* at 148–49 (definition of "construction contract" exempting architect contracts in earlier enacted statute required the court to "assume that when the legislature used the same language to define 'construction contracts' in the Prompt Payment Act, it knew and intended that the latter statute would not include design

professionals.”); *State v. Barragan-Sierra*, 219 Ariz. 276, 282 (Ct. App. 2008) (statutory analysis requires courts to “employ a common sense approach, reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, while taking care to avoid absurd results.”); *Washburn*, 206 Ariz. at 575.

Both TUCSRA and the ECA limit their application to information obtained by “communication service providers.” This is readily apparent from the text. TUCSRA defines a “communication service record” as various categories of “subscriber information.” A.R.S. § 44-1376(1). This is consistent with how the Act describes the other two protected categories of information: public utility records (which include various categories of “customer information”) and telephone records (which include documents retained by a telephone company relating to “customers”). A.R.S. §§ 44-1376(4), (7). “Subscriber information” is easily harmonized when read in conjunction with the ECA, which we must presume the legislature was familiar with when adopting its amendments to TUCSRA, which contemplates “communication service records” as being controlled by and in the possession of “communication service providers.” A.R.S. §§ 13-3001(3); 13-3006; 13-3018.

PacSun is not a “communication service provider.” As the complaint concedes, PacSun is a national clothing retailer. Compl., ¶ 1. PacSun does not, and is not alleged to, “provid[e] a service that allows its users to send or receive oral, wire or electronic communications or computer services.” A.R.S. § 13-3001(3). Accordingly, TUCSRA plainly does not apply to PacSun.

## B.    The Communications at Issue Are Not “Communication Service Records.”

Nothing in the statutory scheme suggests that read receipt technology, or the information derived therefrom, constitute “communication service records.”

The complaint does not allege that PacSun provides, or maintains records of, any documents relating to “the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other

service features." A.R.S. § 44-1376(1). Plaintiff's theory is that the statute's reference to "access logs" encompasses "time logs of email access, logs of associated email addresses, logs of email client type, logs of email path data, logs of recipient location, logs of IP addresses, logs of email forwarding data, and logs of device information including specifically tracking when a recipient opened an email" and what links they clicked within that email. Compl., ¶ 41. But none of these "logs" are mentioned in the statute. A.R.S. § 44-1376(1). No court has interpreted "access log" in the expansive way Plaintiff proposes. In fact, an Arizona trial court recently rejected Plaintiff's novel theory and expansive interpretation of "communication service records":

> A communication service record is "subscriber information," and "access logs" are defined as one type of subscriber information. TUSCRA contemplates the records of a communication service provided by an entity that must maintain those records in a reasonable manner as to prevent their unauthorized or fraudulent disclosure. While H&M's tracking pixel may collect information about when an email was accessed, that type of information is not protected by the act because "access log," in context, is logically read as a log of when a customer used a communications service.

*D'Hedouville v. H&M Fashion USA, Inc.*, Case No. C20243386 (Oct. 11, 2024).[2] The court in *D'Hedouville* conducted an extensive analysis of the statute and concluded "that the information at issue here—when and how an email was opened, how long it was opened, what device was used, the associated IP address of the recipient, and whether it was

---

[2] The Court may consider *D'Hedouville* given the lack of any published authority discussing Plaintiff's interpretation of TUCSRA. *See In re Marriage of McCulloch & Parker*, 257 Ariz. 168 (Ct. App. 2024) ("In the absence of pertinent legal authority, unpublished decisions issued on or after January 1, 2015, may be cited 'for persuasive value.'") (citing Ariz. R. Sup. Ct. 111(c)(1)(C)). PacSun is aware of no published authority discussing the merits of TUCSRA claims similar to those alleged by Plaintiff. Even if the Court does not read Rule 111(c)(1)(C) to apply to Arizona trial court decisions, *D'Hedouville* should nonetheless be considered as persuasive authority pursuant to Ninth Circuit authority. *See Varela v. Ryan*, 2016 WL 8252819, at *14 n. 4 (D. Ariz. Nov. 15, 2016), *report and recommendation adopted*, 2017 WL 568326 (D. Ariz. Feb. 13, 2017) ("Rule 111 of the Arizona Supreme Court generally precludes reliance upon unpublished decisions as precedent. However, courts in the Ninth Circuit have long recognized that such state prohibitions do not govern the Federal Courts in their efforts to ascertain the law of the state in the absence of published decisions, and such decisions supported by reasoned analysis may be deemed persuasive.") (collecting cases).

forwarded—is not a 'communication service record' or a type of 'access log' protected by TUSCRA. The Court does not accept Plaintiff's expansive interpretation of the statute." *Id.* The case was dismissed with prejudice for failure to state a claim.[3] *Id.*[4]

While not binding on this Court, the *D'Hedouville* court's rationale fits comfortably within Arizona statutory construction jurisprudence. "A fundamental rule of statutory construction is that courts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself." *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133 (1965). To that end, it is incumbent on courts to "not inflate, expand, stretch or extend a statute to matters not falling within its expressed provisions."[5] While "access log" is not defined, rendering the statute ambiguous as to the term's meaning, the tools of statutory construction as applied to the ECA and TUCSRA, as described in Section III.A., *supra*, confirm that the statute is only concerned with information relating to Plaintiff's subscription to a communications service provider—not the read receipt technology at issue.

### C.    The Rule of Lenity Mandates that TUCSRA be Construed in PacSun's Favor.

To the extent any ambiguity remains concerning the applicability of TUCSRA to read receipt technology, any uncertainty must be construed in PacSun's favor given the criminal nature of the statute.

TUCSRA provides that "[a] person who violates this article is guilty of a class 1 misdemeanor and is subject to forfeiture of any personal property used or intended to be used to commit the offense." A. R. S. § 44-1376.05. The rule of lenity mandates that courts "resolve all doubts in the defendant's favor" when "constru[ing] penal statutes susceptible

---

[3] A copy of the *D'Hedouville* opinion is attached hereto as **Exhibit A**. *See* Ariz. R. Sup. Ct. 111(c)(3) ("A party citing a memorandum decision must provide either a copy of the decision or a hyperlink to the decision where it may be obtained without charge.").
[4] PacSun is informed and believes that the plaintiff in *D'Hedouville* has appealed the dismissal of the complaint to the Arizona Court of Appeals.
[5] Indeed, as explained in Section III.D, *infra*, the Arizona legislature was concerned with a very specific problem not at all touched upon by the allegations in the complaint.

to different interpretations[.]" *State v. Barnett*, 209 Ariz. 352, 355 (Ct. App. 2004). The rule of lenity applies to statutes that are capable of both criminal and civil application. *Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1200 (9th Cir. 2022) (applying rule of lenity in civil action brought under Computer Fraud and Abuse Act, which contains civil and criminal penalties, narrowly construing statute's prohibition of access to certain computers "without authorization" "so as not to turn a criminal hacking statute into a 'sweeping Internet-policing mandate.'"); *see also Van Buren v. United States*, 593 U.S. 374, 394 (2021) (declining to adopt broad interpretation of Computer Fraud and Abuse Act's prohibition of using a computer in a manner that "exceeds authorized access," noting that "[i]f the 'exceeds authorized access' clause criminalizes every violation of a computer-use policy, then millions of otherwise law-abiding citizens are criminals.").

Application of the rule of lenity here serves Arizona's strong public policy within the state's criminal code "[t]o give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction." A.R.S. § 13-101(2). TUCSRA, contained within Arizona's Criminal Code, provides no notice that implementing read receipt technology within emails is a crime. TUCSRA has never been applied or interpreted so broadly. *See Hartley v. Urb. Outfitters, Inc.*, --- F.Supp.3d ----, 2024 WL 3445004, at *4 (E.D. Pa. July 17, 2024) (describing case raising nearly identical claim to the one brought here as "brought under an Arizona statute that, prior to the recent wave of similar putative class actions brought in federal courts throughout the country, has never been invoked in a civil action of this nature."). Indeed, prior to the recent wave of litigation focused on read receipt technology, the only cases discussing TUCSRA concerned criminal defendants' motions to suppress "communication service records" and "telephone records" (*i.e.*, cell phone records) obtained by law enforcement in connection with a warrant. *State v. Duran*, No. 2 CA-CR 2016-0318, 2017 WL 6333916, at *3 (Ariz. Ct. App. Dec. 11, 2017); *State v. Zuck*, No. 2 CA-CR 2019-0130, 2021 WL 2103598, at *4 (Ariz. Ct. App. May 25, 2021).

The complaint states that read receipt technology is ubiquitous. Compl., ¶ 12.

Plaintiff's expansive interpretation of TUCSRA to encompass read receipt technology would mean that every company that uses that ubiquitous technology is a criminal under Arizona law. The rule of lenity, and common sense, counsel against that conclusion; otherwise, lawsuits like this one threaten to flood Arizona's federal and state courts.

### D.    TUSCRA's Legislative History Further Undermines Plaintiff's Claim.

While the statutory text and scheme are sufficient to demonstrate that TUCSRA does not apply to read receipt technology, the legislative history removes all doubt.

When it enacted TUCSRA, the Arizona legislature was concerned with data brokers engaging in "a practice known as 'pretexting'". Arizona Senate Fact Sheet, 2006 Reg. Sess. H.B. 2785 (March 27, 2006).[6] "Pretexting" occurs when a data broker "fraudulently gain[s] access to telephone records by posing as the customer, then offering the records for sale on the Internet without the customer's consent or knowledge[.]" *Id.* The legislature noted that the customer information obtained via pretexting was maintained by "local, long distance and wireless telephone companies" and included "the numbers called, the time of the calls and particular services used" (defined as "Customer Proprietary Network Information"). *Id.* The legislature further explained that "[t]elephone service providers, including T-Mobile, Sprint and Cingular," in addition to a number of states, were beginning to take legal action against data brokers obtaining customer data via pretexting. *Id.* Arizona sought to join these states in passing legislation to "increase consumer protection and prohibit the unauthorized sale of telephone records." *Id.*

The Arizona legislature was still concerned with pretexting when it amended TUCSRA in 2007. AZ S. F. Sheet, 2007 Reg. Sess. H.B. 2726 (March 12, 2007); AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726 (February 19, 2007). The legislative history reflects that the amendments were meant to mirror the recently enacted Telephone Records and Privacy Protection Act ("TRPPA") in January 2007. AZ S. F. Sheet, 2007 Reg. Sess. H.B.

---

[6] "Arizona courts have cited Senate fact sheets as relevant legislative history and as reflective, though not dispositive, of legislative intent." *State v. Payne*, 223 Ariz. 555, 563 (Ct. App. 2009).

2726 (March 12, 2007). The TRPPA prohibits the unauthorized purchase, receipt, sale, or transfer of "confidential phone records information of a covered entity, without prior authorization from the customer to whom such confidential phone records information relates[.]" 18 U.S.C. § 1039. The TRPPA defined a "covered entity" as an entity that engages in "offering of telecommunications for a fee directly to the public" and providers of "real-time voice communications offered to the public." *Id.* §§ 1039(h)(2), (4); 47 U.S.C. §§ 153(51), (53). The only other statutes referenced in the 2007 amendments were the Gramm-Leach Bliley Act (15 U.S.C. § 6821), which prohibits pretexting of information maintained by financial institutions, and the portion of the FCC's Common Carrier regulations applicable to telecommunications carriers concerning the privacy of "customer proprietary network information" ("CPNI") (47 U.S.C. § 222). AZ S. F. Sheet, 2007 Reg. Sess. H.B. 2726 (March 12, 2007); AZ H.R. B. Summ., 2007 Reg. Sess. H.B. 2726 (February 19, 2007). The legislative history reflects that the legislature (1) identified pretexting as the chief concern of the statute, (2) described the obligations of telecommunications carriers with respect to CPNI and the prohibitions of the TRPPA, (3) explained the reach of the 2006 version of TUCSRA, and (4) simply stated that the amendments would "expan[d] [the statute] to include public utility records and communication service records." AZ S. F. Sheet, 2007 Reg. Sess. H.B. 2726 (March 12, 2007).

Nothing in the legislative history suggests that the legislature was concerned with read receipt technology. Rather, the legislature was concerned with pretexting—information obtained by data brokers from telecommunication providers through surreptitious means. *See id.*; *see also Haag v. Steinle*, 227 Ariz. 212, 215 (Ct. App. 2011) ("We consider the policy behind the law and the evils it was intended to remedy when interpreting a statute."). The *D'Hedouville* court came to the same conclusion after reviewing TUCSRA's legislative history:

> TUSCRA was first enacted in 2006 to respond to concerns that additional security was needed to prevent unauthorized disclosure of information that was held by telecommunications carriers, not direct email marketing. *See*

H.B. 2785 Fact Sheet 47th Leg. 2d Reg. Sess. (Ariz. Apr. 24, 2006) ("[L]ocal, long distance and wireless telephone companies collect customer information, including the numbers called, the time of the calls and particular services used . . . The FCC is currently investigating numerous companies for allegedly illegally procuring phone records.") This initial focus on telephone records was expanded to include "communication service records" and "public utility records." It again showed a concern that confidential information regarding a subscriber to a communication service might be procured by fraudulent or deceptive means. The Arizona legislature has not amended the statute since 2007, and no Arizona court has interpreted "communication service record" to include the information gleaned from a tracking pixel.

*D'Hedouville*, Case No. C20243386, p. 4.

This conclusion is bolstered by the fact that the legislature lifted the definition of "communication service record" wholesale from the ECA, which describes those records as those created and/or obtained from communication service providers. *Compare* A.R.S. § 44-1376.02(A) *with* A.R.S. § 13-3018(B). The legislature could have manifested its intention to *criminalize* the type of conduct alleged in the complaint, but did not. *See Haag*, 277 Ariz. at 215 ("Courts will not read into a statute something that is not within the manifest intent of the legislature as indicated by the statute itself, nor will the courts inflate, expand, stretch, or extend a statute to matters not falling within its express provisions.").

Should the Court find that the statute is ambiguous as to whether it applies to the conduct PacSun is alleged to have committed in the complaint, TUCSRA's legislative history resolves that ambiguity with a resounding no.

## IV.   PLAINTIFF HAS NOT ALLEGED SUFFICIENT FACTS DEMONSTRATING THAT HE IS PACSUN'S "CUSTOMER."

Plaintiff fails to allege that he has ever been a "customer" of PacSun.

TUCSRA prohibits obtaining telephone, public utility, and communication service records "without the authorization of the customer to whom the record pertains[.]" A.R.S. § 44-1376.01. TUCSRA does not define "customer," but the word is used within the definitions of "public utility record" and "telephone record." *See* A.R.S. § 44-1376(4) (defining "public utility record" as including "customer information, including name, billing or installation address, length of service, payment method or any other personal

-13-

identifying information"); A.R.S. § 44-1376(7)(a) (defining "telephone record" as including information reflecting a "telephone number dialed by the customer or the incoming number of the call directed to a customer or other data related to such calls typically contained on a customer telephone bill"). TUCSRA's private right of action only permits suit by "a customer whose communication service records, telephone records or public utility records were procured, sold or received in violation of this article[.]" A.R.S. § 44-1376.41(A).

The complaint does not allege that Plaintiff has ever been PacSun's customer. *See* Compl. The complaint only alleges that Plaintiff received and opened emails from PacSun. *See id.*, ¶¶ 23, 24. This is insufficient. As the *D'Hedouville* court explained when dismissing a nearly identical claim against another retailer:

> Plaintiff does not allege that he is a customer of H&M, that H&M is a communication service provider, or that H&M procured his communication service records that were retained by another communication service provider. Nor could he, because H&M is not a communication service provider and the information at issue here is not "subscriber information." Plaintiff has not alleged that he is a customer of H&M because he does not claim that he has purchased any item from H&M. Even if he had, it would not change the outcome because the act contemplates a customer, or subscriber, of a communication service.

*D'Hedouville*, Case No. C20243386, p. 3. Here, as in *D'Hedouville*, Plaintiff never alleges that he purchased any item from PacSun. *See* Compl. Plaintiff's failure to allege his status as a customer provides an additional, independent grounds for dismissal.

## V.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

Dismissal with prejudice is appropriate where amendment would be futile. *Macias v. Kaplan-Siekmann*, 2024 WL 83448, at *6 (D. Ariz. Jan. 8, 2024); *Maloney v. Kropp*, 2013 WL 500934, at *1 (D. Ariz. Feb. 11, 2013). Plaintiff's complaint cannot be cured by amendment and leave to amend would therefore be futile. TUCSRA does not extend to the conduct alleged in the complaint. No amount of artful pleading could change that.

## LR CIV 12.1(C) CERTIFICATION OF COUNSEL

Pursuant to Local Rule of Civil Procedure 12.1(c), counsel for Defendant met and conferred with counsel for Plaintiff on November 13, 2024, regarding the issues addressed

in Defendants' Motion for Judgment on the Pleadings. The consultation included a telephone conversation between counsel. Despite the parties' good faith efforts, they were unable to agree that Plaintiff's Complaint was curable in any part by a permissible amendment.

## CONCLUSION

For all the reasons stated above, this Court should grant this Motion in its entirety and dismiss the complaint against PacSun with prejudice.

Dated: November 27, 2024          Respectfully submitted,


                                  By: /s/ Brian M. Bergin

                                  **BERGIN, FRAKES, SMALLEY &**
                                  **OBERHOLTZER, PLLC**
                                  Brian M. Bergin (AZ Bar No. 016375)
                                  4343 East Camelback Road, Suite 210
                                  Phoenix, Arizona 85018
                                  Telephone: 602.888.7855
                                  Email: bbergin@bfsolaw.com

                                  *Local Counsel for Manatt, Phelps & Phillips, LLP*

                                  **MANATT, PHELPS & PHILLIPS, LLP**
                                  Brad Seiling (Admitted *Pro Hac Vice*)
                                  Email: BSeiling@manatt.com
                                  Nathaniel L. Bach (Admitted *Pro Hac Vice*)
                                  Email: NBach@manatt.com
                                  Cody A. DeCamp (Admitted *Pro Hac Vice*)
                                  Email: CDeCamp@manatt.com
                                  2049 Century Park East, Suite 1700
                                  Los Angeles, California 90067
                                  Telephone: 310.312.4000

                                  *Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 27th day of November 2024, I caused the foregoing document to be filed with the Arizona District Court Clerk's office using the CM/ECF System for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ Shelly Hilton*