Scott I. Palumbo - State Bar #021271
PALUMBO WOLFE & PALUMBO, P.C.
2800 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
(602) 265-5777
(602) 265-7222 (fax)
pwsp@palumbowolfe.com

Eugene Y. Turin (Illinois Bar No.6317282)
Jordan R. Frysinger (Illinois Bar No. 6335897)
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com
jfrysinger@mcgpc.com

Attorneys for Plaintiff – Pro Hac Vice

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Anthony Williams, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>Pacific Sunwear of California, LLC.,<br><br>Defendant. | No. 2:24-cv-02015-JJT<br><br>Hon. Judge John J. Tuchi<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

**INTRODUCTION**

The Telephone, Utility, and Communication Service Records Act ("TUCSRA") states that "[a] person shall not . . . [k]nowingly procure, attempt to procure, solicit or conspire with another to procure . . . a communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01. The TUCSRA states that "'communication service record' includes subscriber information, including name, . . . electronic account identification and associated screen names, . . . access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as. . . electronic mail. . ." A.R.S. § 44-1376(1).

Defendant Pacific Sunwear of California, LLC. ("Defendant" or "PacSun") is one of the nation's largest retailers. In order to increase its marketing efforts, Defendant sends massive amounts of marketing emails to its consumers to entice them to purchase its products. However, unbeknownst to its consumers, Defendant embeds hidden spy pixel trackers within its emails which capture sensitive statutorily protected information. The TUCSRA provides strong privacy protections against corporations who harvest the "communication service records" of Arizona residents without consent. As such, Plaintiff alleges that Defendant violated the TUCSRA by its use of spy pixels which secretly extracted exactly the type of sensitive communications that the statute was meant to protect when consumers interacted with Defendant's emails.

Rather than seeking to remedy the violations of its consumers' privacy rights, Defendant instead takes a second bite at the apple to dismiss Plaintiff's Class Action Complaint ("Complaint," Dkt. 1-1), arguing that the TUCSRA does not apply to the alleged conduct and illicitly procured information. (Motion for Judgment on the Pleadings, "Motion," Dkt. 23.) However, the allegations in Plaintiff's Complaint derail Defendant's arguments by illustrating violations of the exact conduct that the TUCSRA was enacted to regulate. As such, and as explained in further detail below, Plaintiff has adequately alleged Defendant's TUCSRA violations, and thus, Defendant's Motion should be denied in its entirety.

## BACKGROUND

Defendant is one of the nation's largest retailers, boasting $900 million in revenue as of 2022. (Complaint at ¶ 1.) In order to increase its marketing efforts, Defendant sends massive amounts of marketing emails to its consumers to entice them to purchase its products. (*Id.* at ¶ 2.) Defendant embeds spy pixels in its marketing emails and uses such pixels to procure sensitive engagement data from the email's recipients. (*Id.* at ¶ 18.) Defendant uses such collected engagement data so it can link the data with the specific identity of the recipient and build a profile of their interests. (*Id.* at ¶ 19.) Specifically, Defendant embedded spy pixels in its marketing emails to track who opened the email and what they clicked on. (*Id.* at ¶ 20.)

Plaintiff is a resident of Arizona and has frequently received and opened marketing emails from Defendant. (*Id.* at ¶ 23.) Each time Plaintiff opened one of

Defendant's emails, Defendant procured information identifying him and collected sensitive information, including when he opened and read the email, through Defendant's spy pixels. (Complaint at ¶ 25.) Specifically, live-data tracking analysis demonstrates that several spy pixels are embedded in Defendant's emails to track and collect Plaintiff's interactions with the email. (*Id.* at ¶ 26.) Such pixels are embedded in the images of the email, which are stored on a server and referenced in a URL. (*Id.*) These URLs contain a Global Universal Identifier (GUID) which can show when a user opened an email and what links they clicked and further track the user through the website once directed there from the email. (*Id.*) However, Defendant never received lawful and valid consent from Plaintiff to procure and obtain his private email records or the information Defendant's email spy pixels obtained. (*Id.* at ¶ 28.)

## LEGAL STANDARD

A district court reviews a Rule 12(c) motion under the same legal standard as Rule 12(b)(6). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Therefore, the inquiry is "whether the complaint at issue contains sufficient factual matter, accepted as true, to state a claim [to] relief that is plausible on its face." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012). The motion will be granted only if a court finds that no issue of fact exists, and that the movant is entitled to judgment as a matter of law. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).

## ARGUMENT

### A. Plaintiff States A Claim Under A.R.S. § 44.1376.01

*i. A.R.S. § 44-1376.01 does not require Defendant to be a Communications Service Provider.*

Defendant first argues that the TUCSRA does not apply to PacSun because it is not a "communication service provider." (Motion at 5-7.) However, no communication service provider limitation exists in the TUCSRA's text. In fact, the exact opposite is true: nothing in the statute limits its application solely to communication service providers, and Defendant fails to cite any plain language to support such an assertion.

Instead, Defendant asks this Court to apply the illusory communication service provider limitation because one exists in Arizona's Eavesdropping and Communications Act ("ECA"). In doing so, Defendant inadvertently bolsters Plaintiff's argument that no limitation exists in the TUCSRA, as the ECA was explicitly drafted to include such language, whereas the TUCSRA was not. The plain language of the TUCSRA unambiguously prohibits "procur[ing] communication service record[s]," and makes no mention that its application is limited to "providers" of said communication service records. A.R.S. § 44-1376.01(A)(1). Rather, the TUCSRA simply states that if a "person" knowingly procures the protected records and information, then they are subject to liability and the aggrieved party may recover from "the person that committed the violation." A.R.S. § 44-1376.01(A)(1); A.R.S. § 1376.04(A). Thus, the legislature clearly meant for liability to attach to the procurer of such communication service records

irrespective of the service that the procurer provides.

Furthermore, if this Court were to adopt Defendant's reading of the TUCSRA, it would mean that any person or entity would be permitted to procure, or cause to be procured, communication service records without authorization or by deceptive means, as long as they are not a "communication service provider." Such an interpretation is obviously not what the Arizona legislature intended when it drafted the TUCSRA to explicitly state that "[a] *person* shall not do any of the following" prohibited acts." A.R.S. 44-1376.01(A) (emphasis added). Therefore, this Court should deny Defendant's argument asking this Court to read words into the TUCSRA that are not present, despite their existence or relevance in the ECA, which governs separate conduct. *AAA Cab Serv., Inc. v. Indus. Comm'n of Arizona*, 213 Ariz. 342, 344 (Ct. App. 2006) ("This court cannot write a term into the statute that the legislature did not include.").

*ii. Defendant's spy pixels collect, obtains and uses Arizona residents' communication service records.*

Defendant argues that the information it procured through its invasive use of spy pixels in its marketing emails are not included in the definition of "communication service record." (Motion at 7-9.) In doing so, Defendant relies on the non-binding state court decision in *D'Hedouville v. H&M Fashion USA, Inc.* to weakly bolster its assertion that the express terms of the TUCSRA do not adhere to those terms' ordinary meanings. Case No. C20243386 (Oct. 11, 2024) (Motion, Ex. A). Specifically, Defendant claims that under *H&M Fashion USA, Inc*., the sensitive statutorily protected information that it

illicitly procured from its consumers does not fit the definition of a "communication service record" or an "access log." However, the goal in statutory interpretation is to "effectuate the legislature's intent as expressed in the statute's text." *Silver v. Pueblo Del Sol Water Co.*, 244 Ariz. 553, 559 ¶ 22 (2018) (cleaned up). Such goal was seemingly ignored by the *H&M Fashion USA, Inc.* court where it reached outside the express language of the statute to determine that "access logs" and other enumerated protected information are only protected by the TUCSRA "when a customer used a communications service." *H&M Fashion USA, Inc.*, Case No. C20243386 (Oct. 11, 2024). This conclusion unduly restricts the TUCSRA's application, preventing it from safeguarding the very information explicitly identified in its definitions that are intended to be protected. To that end, the plain language of the TUCSRA defines a "communication service record" to:

> Include[] subscriber information, including name, billing or installation address, length of service, payment method, telephone number, **electronic account identification** and **associated screen names**, toll bills or **access logs**, **records of the path of an electronic communication between the point of origin and the point of delivery** and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, **electronic mail**, paging or other service features.

A.R.S. § 44-1376(1) (emphasis added). "Absent a statutory definition, courts generally give words their ordinary meaning and may look to dictionary definitions." *In re Drummond*, 543 P.3d 1022, 1025 (Ariz. 2024). For example, "Access" means "to open or

load (a computer file, an Internet site, etc.),"[1] and "Log" means "to make a note or record of: enter details of or about in a log."[2] Therefore, Plaintiff's allegations that Defendant uses spy pixels to collect and store tracking data, including, among other things, when an email recipient opened an email and what they clicked on, means Defendant unlawfully procured Plaintiff's email "access logs." (Complaint at ¶¶ 2, 18, 25, 26.)

Notably, the definition of "communication service record" is very broad and considers various types of information that are collected without authorization or by fraudulent, deceptive, or false means. Plaintiff alleges that Defendant, by its use of spy pixels, procures a slew of information including time logs of email access, associated email addresses, email client type, email path data, IP addresses, device information, when the recipient of an email opened it, what links the recipient clicked and then tracking the recipient through the website once directed there from the email. (Complaint at ¶ 41.) Plaintiff also alleges that Defendant uses the email spy pixels to capture interaction data with Arizona residents, including when and where the email was opened and interacted with. (*Id.* at ¶ 16.) The spy pixels allow Defendant to monitor such individuals and their behavior by collecting and storing the above tracking data to build a detailed profile of the email recipients' interests. (*Id.* at ¶ 2.)

Reading the above allegations in light most favorable to Plaintiff, the TUCSRA's

---

[1] Merriam-Webster, https://www.merriam- webster.com/dictionary/access
[2] Merriam-Webster, https://www.merriamwebster.com/dictionary/log

definition of "communication service record" includes exactly the type of information that Plaintiff alleged was illicitly procured by Defendant, including "access logs." Therefore, a plain reading of the TUCSRA supports Plaintiff's allegation in his Complaint that Defendant "knowingly procure[d] [a] . . . communication service record of any resident of this state without the authorization of the customer to whom the record pertains." A.R.S. § 44-1376.01. Consequently, the Court should reject the Defendant's interpretation of the TUCSRA, as it does not align with the statute's plain language.

*iii. The Rule of Lenity does not absolve Defendant from TUCSRA compliance.*

Defendant argues that under the rule of lenity, any uncertainty in the interpretation of the TUCSRA must be construed in its favor and that the TUCSRA provides no notice or fair warning that its illicit use of email spy pixels is a crime. (Motion at 9-11.) In other words, Defendant argues that its use of invasive tracking technology to extract sensitive engagement data from customers' private emails warrants leniency in culpability, citing its own failure to accurately interpret the TUCSRA's prohibitions. However, "the rule of lenity generally requires that ambiguous statutes must be interpreted in favor of criminal defendants *if* other standard interpretive tools cannot resolve an ambiguity." *Garland v. Cargill*, 602 U.S. 406 (2024). As detailed above, the TUCSRA's plain language is unambiguous and normal methods of statutory construction and interpretation can resolve any existing uncertainty.

Furthermore, giving each word in the TUCSRA its plain meaning would have

clearly put Defendant on notice of the prohibited conduct contemplated by the statute. As provided in the example above, the term "access logs" is easily understood by its dictionary definition and readily applies to the information Plaintiff alleged Defendant procured as a result of its use of spy pixels in its marketing emails. Although Defendant contends that ambiguities in the statute must be resolved in its favor, it fails to identify any ambiguities in the plain language of the TUCSRA that would justify the application of this rule. Therefore, the rule of lenity neither applies nor warrants dismissal of Plaintiff's Complaint. Nor does such rule dispose Defendant of carrying its burden to demonstrate to the court that it, as the movant, is entitled to judgment as a matter of law while all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Buckey v. Cty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).

*iv. The TUCSRA was passed to prevent the conduct Plaintiff alleges occurred in his Complaint.*

Defendant argues that the legislative history undermines Plaintiff's claim because the Arizona legislature was concerned with telephone record "pretexting" and not Defendant's "read receipt technology." (Motion at 11-12.) Defendant's argument fails for various reasons.

First, as detailed above, the plain meaning of the statute is unambiguous and Defendant fails to identify any ambiguities in the TUCSRA that would suggest the statute's legislative history should be examined over the clear legislative language. *In re*

*McLauchlan*, 252 Ariz. 324, 326 ¶ 15 (2022) ("Legislative history is not a substitute for clear legislative language"); *State v. Ewer*, 254 Ariz. 326, 331 (2023) ("We do not consider legislative history when the correct legal interpretation can be determined from the plain statutory text"). Therefore, rather than using the legislative history to predict the legislative intent, this Court should examine the plain unambiguous language of the TUCSRA to interpret the statute.

Second, and contrary to Defendant's argument that the legislative history suggests that the Arizona legislature was only concerned with pretexting, the Telephones Records Act of 2006 specifically prohibited any person from procuring telephone records of Arizona residents through *fraudulent or deceptive* means. AZ H.R. B. Summ., 2006 Reg. Sess. H.B. 2785 (4/24/06). In 2007, the statute was amended to include "public utility records" and "communication service records" indicating that the TUCSRA is not limited to telephone pretexting. Defendant fails to provide any explanation for how the TUCSRA was meant to outlaw the unauthorized procurement of only telephone records given its amendment to regulate and prohibit a broader scope of conduct. *See State v. Garza Rodriquez*, 791 P.2d 633,164 Ariz. 107, 111 (1990) ("[W]e presume that by amending a statute, the legislature intends to change the existing law.") In passing the 2007 amendment that added "public utility records" and "communication service records," the legislature directly intended the prohibited conduct to apply to the unauthorized or fraudulent procurement of information *in addition* to telephone records. Thus, the legislature intended to regulate the conduct Plaintiff alleges occurred in his Complaint *i.e.*

the unauthorized procurement of communication service records. Here, Defendant targets email subscribers to send marketing materials in order to increase the sales of its products. While its email subscriber/consumers believe they are simply receiving a marketing email, Defendant hides spy pixels within to track and gather sensitive engagement data from its email recipients. Such engagement data, as Plaintiff alleges, are communication service records as defined under the TUCSRA. Therefore, the plain language of the statute and the fact that the statute was amended to include "communication service records" demonstrates that the Arizona legislature intended to prohibit Defendant's conduct.

*v. The TUCSRA does not require Plaintiff to purchase products to pursue a claim.*

Defendant seeks dismissal of Plaintiff's Complaint because Plaintiff has not alleged that he is a "customer" of PacSun. (Motion at 13-14.) In Defendant's opinion, the TUCSRA requires Plaintiff to purchase an item from PacSun in order to pursue a claim. (*Id* at 14.) Defendant is wrong.

While the TUCSRA uses the term "customer" in the definitions of "public utility record" and "telephone record," the TUCSRA does not include the term "customer" in the definition of "communication service record." Therefore, because Plaintiff has alleged that Defendant illicitly procured his communication service records, no such "customer" limitation applies.

Further, the TUCSRA does not define "customer" as it does other listed terms.

Defendant's assumption that a statute designed to protect the fraudulent or unauthorized procurement of communication service records applies only to purchasers of products is illogical and unduly restricts the statutes application. Under Defendant's reading of the statute, it would be legal to fraudulently procure Arizona residents' communication service records as long as those residents were not purchasers of Defendant's products. Such limitation was clearly not intended and no language exists in the statute to give it that effect. Accordingly, Plaintiff was not required to allege that he purchased one of Defendant's products in order to bring his claim under the TUCSRA.[3]

### B. Amendment of Plaintiff's Complaint Would Not Be Futile.

A plaintiff should be given leave to amend at least once unless it is clear that no amendment could cure the deficiencies in the complaint. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). While Defendant argues that Plaintiff's Complaint cannot be cured by amendment, and would therefore be futile, Plaintiff has several material facts, including the fact that he is a PacSun customer, that he can add to his Complaint to demonstrate that the conduct alleged implicates the TUCSRA. Therefore, this Court should reject Defendant's assertion that Plaintiff's Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings

[3] Plaintiff is a customer of PacSun. If this Court were to dismiss Plaintiff's Complaint because he failed to allege he is a PacSun customer (it should not), Plaintiff asks this Court to afford him the opportunity to amend his Complaint to cure this purported form over substance pleading error.

should be denied in its entirety.

Respectfully submitted,

By: /s/ *Jordan R. Frysinger*

Scott I. Palumbo - State Bar #021271
PALUMBO WOLFE & PALUMBO, P.C.
2800 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
(602) 265-5777
(602) 265-7222 (fax)
pwsp@palumbowolfe.com

Eugene Y. Turin (Illinois Bar No.6317282)
Jordan R. Frysinger (Illinois Bar No. 6335897)
MCGUIRE LAW, P.C.
55 W. Wacker Dr., 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
eturin@mcgpc.com
jfrysinger@mcgpc.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8 day of January 2025, I caused the foregoing document to be filed with the Arizona District Court Clerk's office using the CM/ECF System for filing, which will provide a Notice of Electronic Filing to all CM/ECF registrants.

By: *<u>/s/ Jordan R. Frysinger</u>*