**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony Williams,<br><br>            Plaintiff,<br><br>v.<br><br>Pacific Sunwear of California LLC,<br><br>            Defendant. | No. CV-24-02015-PHX-JJT<br><br>**ORDER** |

At issue is Defendant Pacific Sunwear of California LLC's (PacSun) Motion for Judgment on the Pleadings (Doc. 23, Motion) filed pursuant to Federal Rule of Civil Procedure 12(c). Defendant argues that Plaintiff Anthony Williams's Complaint fails to state a claim under Arizona's Telephone, Utility and Communication Service Records Act (TUCSRA), A.R.S. § 44-1376 *et seq*. Plaintiff filed a Response (Doc. 26, Response), and Defendant filed a Reply (Doc. 27, Reply). The Court finds this matter appropriate for resolution without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion for Judgment on the Pleadings and dismisses this action.

**I.    Background**

Defendant is a California clothing retailer with its headquarters in California. (Doc. 1-1, Ex. 4, Complaint ¶ 11.) Plaintiff is an Arizona resident who has sued Defendant on his own behalf and on behalf of all similarly situated individuals in the state of Arizona. (*See id.* ¶ 10.) This action arises out of allegations that Defendant routinely embeds its marketing emails with "hidden spy pixel trackers" that allow Defendant to "capture

sensitive information, including the time and place where Plaintiff and other Arizona residents open the email and what contents they clicked on." (*Id.* ¶ 2.) The Complaint asserts a claim under A.R.S. § 44-1376.01(A)(1), which provides that "[a] person shall not . . . [k]nowingly procure, attempt to procure, solicit or conspire with another to procure a public utility record, a telephone record or communication service record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." (Complaint ¶¶ 3, 39–48.)

Defendant filed a Motion for Judgment on the Pleadings, arguing that TUCSRA does not apply to the conduct alleged in the Complaint. First, Defendant claims it is not a "communication service provider." (Motion at 5–7.) Second, it argues the information collected through its email tracking pixels does not qualify as a "communication service record" under the statute, as such records are maintained exclusively by communication service providers. (Motion at 7–9; Reply at 2.) Finally, Defendant asserts that Plaintiff fails to allege he is a "customer" of PacSun—a status Defendant contends is necessary to bring a claim under TUCSRA. (Motion at 13–14; Reply at 6–7.)

In response, Plaintiff argues that TUCSRA contains no limitation that would exempt Defendant as a non-communication service provider. (Response at 4–5.) Plaintiff further contends that the information obtained through spy pixels—including when an email was opened, how long it was viewed, and the user's location—constitute "access logs" under the statutory definition of "communication service record." (Response at 5–8.) Regarding the customer requirement, Plaintiff maintains that TUCSRA does not include the term "customer" in the definition of "communication service record," and therefore no such limitation applies to his claim. (Response at 11–12.)

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(c)

A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. *Westlands Water Dist. v. Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992). A Rule 12(c) motion should only

be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is also proper when there is either a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be accepted] as true and construe[d] . . . in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings under Rule 12(c) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations omitted).

A Rule 12(c) motion is functionally identical to a Rule 12(b) motion to dismiss for failure to state a claim, and the same legal standard applies to both motions. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Specifically, a complaint must include "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). While a complaint does not need to "contain detailed factual allegations . . . it must plead enough facts to state a claim to relief that is plausible on its face." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**B.    Arizona's Statutory Protections for Communication Service Records**

Seven years before TUCSRA was enacted, Arizona amended the Eavesdropping and Communications Act (ECA), A.R.S. § 13-3001 *et seq.*, to allow prosecutors to

subpoena "communication service records" from "communication service providers" operating in the state. A.R.S. § 13-3018(A)–(B); *see* 2000 Ariz. Legis. Serv. Ch. 189 (H.B. 2428). The ECA defines "communication service provider" as "any person who is engaged in providing a service that allows its users to send or receive oral, wire or electronic communications or computer services." A.R.S. § 13-3001(3). Notably, the ECA uses the identical definition of "communication service record" that TUCSRA would later adopt. *See* A.R.S. §§ 13-3018(G), 44-1376(1); Section III.C *infra*.

In 2006, Arizona enacted the Telephone Records Act (TRA), which made it illegal for data brokers to engage in "pretexting"—the practice of fraudulently obtaining and selling customer telephone records without consent. *See* 2006 Ariz. Legis. Serv. Ch. 260, § 1 (H.B. 2785); Ariz. Sen. Fact Sheet for H.B. 2785, 2006 Reg. Sess. H.B. 2785 (Apr. 25, 2006). The TRA made it illegal to "[k]nowingly procure . . . a telephone record of any resident of this state without the authorization of the customer to whom the record pertains or by fraudulent, deceptive or false means." 2006 Ariz. Legis. Serv. Ch. 260 § 1 (H.B. 2785). The TRA defined "telephone record" as customer information "[r]etained by a telephone company," including call times, duration, charges, and location from or to which the call was made. *Id.*

In 2007, Arizona enacted TUCSRA to extend pretexting protections to public utility and communication service records. *See* 2007 Ariz. Sess. Ch. 210, § 2 (H.B. 2726) (May 14, 2007); Ariz. Sen. Fact Sheet for H.B. 2726, 2007 Reg. Sess. H.B. 2726 (Apr. 20, 2007) (defining pretexting as "the practice of getting personal information under false pretenses" and stating that TUCSRA's purpose is to "[p]rohibit[ ] the procurement and sale of public utility records and communication service records through unauthorized, fraudulent or deceptive means"). TUCSRA provides that "[a] person shall not . . . [k]nowingly procure . . . a public utility record, a telephone record or *a communication service record* . . . without [] authorization . . . or by fraudulent, deceptive or false means." A.R.S. § 44-1376.01(A)(1) (emphasis added).

The ECA and TUCSRA both define "communication service record" in terms of various types of "subscriber information," such as names, billing addresses, length of service, payment methods, access logs, and caller ID records. *See* A.R.S. § 44-1376(1); A.R.S. § 13-3018(G). Likewise, TUCSRA defines "public utility record" in terms of "customer information," such as "name, billing or installation address, length of service, payment method or any other personal identifying information." A.R.S. § 44-1376(4). And the definition of "telephone record" encompasses records "made available to a telephone company . . . solely by virtue of the relationship between the telephone company and the customer." A.R.S. § 44-1376(7).

Thus, TUCSRA is designed to safeguard customer records held by (1) telephone companies, (2) public utilities, and (3) communication service providers. It mandates that these entities implement reasonable measures to prevent "unauthorized or fraudulent disclosure of [telephone, public utility, and communication service] records that could result in a substantial harm or inconvenience to any customer." A.R.S. § 44-1376.01(B). TUCSRA also provides affected customers with a private right of action and makes violations of the statute a class 1 misdemeanor. A.R.S. §§ 44-1376.04(A), 44-1376.05.

### III. DISCUSSION

#### A. The ECA and TUCSRA Must Be Construed Together.

Plaintiff's claim that Defendant violated TUCSRA requires determining whether Defendant's use of email tracking pixels constitutes the unlawful procurement of a "communication service record." (*See* Complaint at 9–10; A.R.S. § 44-1376.01(A)(1).) To properly interpret TUCSRA, the Court must consider not only the isolated definition of "communication service record" within A.R.S. § 44-1376, but also how this term operates within the broader statutory scheme.

TUCSRA and the ECA must be read together as complementary statutes within Arizona's regulatory framework for communications. "[I]f statutes relate to the same subject and are thus *in pari materia* [upon the same matter], they should be construed together with other related statutes as though they constituted one law." *Pima County by*

*City of Tucson v. Maya Const. Co.*, 158 Ariz. 151, 155 (1988); *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (noting that consideration of related statutes is a primary tool of statutory interpretation, not a secondary method). Here, both TUCSRA and the ECA regulate the protection of subscribers' communication records, and the legislature deliberately used the same language to define the operative term—communication service records—in both statutes. *Compare* A.R.S. § 44-1376(1), *with* A.R.S. § 13-3018(G). The Arizona legislature is presumed to be aware of existing statutes when it enacts or amends a statute. *Daou v. Harris*, 139 Ariz. 353, 357 (1984); *Planned Parenthood Arizona, Inc. v. Mayes*, 257 Ariz. 137, 142 ¶ 15 (2024). Had the legislature intended to create a separate category of communication service records—identically defined but substantively different—"it would have stated so explicitly." *Daou*, 139 Ariz. at 357. Therefore, the Court shall construe TUCSRA and the ECA together as part of a unified statutory scheme. In doing so, the Court is obliged "to harmonize statutory provisions and avoid interpretations that result in contradictory provisions." *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 11 (2023).

### B.    Defendant Is Not a Communication Service Provider.

Plaintiff contends that because TUCSRA prohibits "any person" from procuring a communication service record without authorization, the statute applies regardless of whether the defendant is a communication service provider. (*See* Response at 4–5.) However, this argument misconstrues the statute by isolating its liability clause from the specific types of records it protects.

The critical inquiry is not who may violate the statute, but rather what constitutes a "communication service record" under TUCSRA. The definition itself provides the answer, specifying that a "communication service record" includes "*subscriber* information." A.R.S. § 44-1376(1) (emphasis added). This term "subscriber" is significant—it presupposes a relationship between the individual and a communication service provider to which they subscribe. The definition then enumerates examples of such subscriber information, including "billing or installation address, length of service,

payment method, telephone number, electronic account identification and associated screen names," all of which relate to the provision of communication services. *Id.*

TUCSRA is not aimed at regulating any entity that sends or receives communication, but rather those that provide the infrastructure and services enabling communication. While Plaintiff correctly notes that TUCSRA permits "any person" to be liable for violating the statute, (Response at 5), this does not expand what constitutes a "communication service record." It simply means that both communication service providers and third parties (like data brokers engaging in pretexting) can be liable for improperly obtaining the protected class of records. This reading comports with the legislature's stated purpose in enacting TUCSRA: to prevent "pretexting," whereby third parties fraudulently obtain protected records from legitimate communication service providers. *See* Ariz. Sen. Fact Sheet for H.B. 2726, 2007 Reg. Sess. H.B. 2726 (Apr. 20, 2007).

Defendant is not a "communication service provider" as that term is understood within the statutory framework. Unlike telephone companies or internet service providers, Defendant is not engaged in providing a service that allows its users to send or receive electronic communications. Rather, Defendant is a clothing retailer that uses email as a method of marketing to potential customers.

Multiple courts confronting identical claims have reached the same conclusion. *See Carbajal v. Home Depot U.S.A., Inc.*, 2024 WL 5118416, at *3 (D. Ariz. Dec. 16, 2024) (harmonizing TUCSRA and the ECA to conclude that communication service records are those retained by communication service providers, rather than retailers communicating by email); *D'Hedouville v. H&M Fashion USA, Inc.*, No. C20243386, at 3 (Ariz. Super. Ct. Oct. 11, 2024) (same).

This interpretation does not, as Plaintiff suggests, frustrate the legislature's intent. Rather, it effectuates the precise purpose for which TUCSRA was enacted: to protect sensitive records maintained by communication service providers from being fraudulently obtained by unauthorized third parties.

- 7 -

### C. Defendant Does Not Retain Communication Service Records.

Even if Defendant could be considered a communication service provider, the information collected through its email tracking pixels does not constitute communication service records as contemplated by TUCSRA. The act defines a "communication service record" as:

> [S]ubscriber information, including name, billing or installation address, length of service, payment method, telephone number, electronic account identification and associated screen names, toll bills or access logs, records of the path of an electronic communication between the point of origin and the point of delivery and the nature of the communication service provided, such as caller identification, automatic number identification, voice mail, electronic mail, paging or other service features.

A.R.S. § 44-1376(1).

Plaintiff argues that the information collected by Defendant's tracking pixels constitute "access logs" and "records of the path of an electronic communication between the point of origin and point of delivery" under the statute. (*See* Response at 5–8.) Plaintiff provides dictionary definitions of "access" as "to open or load" and "log" as "to make a note or record of," concluding that the tracking data about when an email was opened falls within the definition of "access logs." (*Id.* at 6–7.)

This argument is unpersuasive for several reasons. First, Plaintiff's approach of selectively defining individual words like "access" and "log" divorces these terms from their statutory context. The term "access logs" appears specifically as a type of "subscriber information" within the definition of "communication service record." A.R.S. § 44-1376(1). By focusing on dictionary definitions of isolated terms, Plaintiff disregards the context that shapes the meaning of these terms within the statutory framework.

Second, "[i]f the Arizona legislature had intended TUCSRA to apply to any record about any communication . . . it could have done so by using the word 'record'" alone, instead of the specific phrase "communication service record." *Carbajal*, 2024 WL 5118416, at *3. The use of this specific terminology indicates a narrower scope than what

- 8 -

Plaintiff suggests. (*See* Response at 7.) The statutory structure and language make clear that "access logs" refers to records of a subscriber's access to communication services—not marketing metrics collected by retailers about email engagement.

Finally, for the reasons discussed in Section II.B *supra*, TUCSRA's legislative history supports this interpretation. As noted in *D'Hedouville*, TUCSRA's 2007 amendment "again showed a concern that confidential information regarding a *subscriber to a communication service* might be procured by fraudulent or deceptive means." *D'Hedouville*, No. C20243386, at 3 (emphasis added). The Arizona legislature has not amended TUCSRA since 2007, and no Arizona court has interpreted "communication service record" to include the information gleaned from email tracking pixels. The Court declines Plaintiff's invitation to expand the statute's reach beyond its intended scope.

## VI.   CONCLUSION

For the foregoing reasons, TUCSRA does not apply to the email tracking technology at issue in this case. Because a "communication service record" under TUCSRA refers to subscriber information maintained by communication service providers, and Defendant is not a communication service provider, Plaintiff's claim fails as a matter of law.[1] Furthermore, the information obtained through Defendant's email tracking pixels does not constitute a "communication service record" within the meaning of the statute.

**IT IS THEREFORE ORDERED** granting Defendant's Motion for Judgment on the Pleadings (Doc. 23).

. . .

. . .

---

[1] Although Plaintiff requests leave to amend for the purpose of adducing "several material facts," including that he is a PacSun customer, (Response at 12), such amendment would be futile. *See Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (leave to amend may be denied when amendment would be futile). Plaintiff's claim fails not because he did not allege a customer relationship with Defendant, but instead because TUCSRA does not cover the email tracking technology at issue here, for the reasons explained in this Order. As other courts addressing these claims have concluded, such defects cannot be cured by amendment. *See Mills v. Saks.com LLC*, 2025 WL 34828, at *7 (S.D.N.Y. Jan. 6, 2025) (declining to grant leave to amend "[b]ecause the defects in [the] complaint cannot be cured with an amendment"); *D'Hedouville*, No. C20243386, at 5 (finding that "[a]mendment of the Complaint would be futile.").

1  **IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment
2  accordingly and terminate this matter.
3  Dated this 16th day of April, 2025.

_____
Honorable John J. Tuchi
United States District Judge